## Case No. 7,566.

### JUDSON v. DAY.

[Nowhere reported; opinion not now accessible.]

## Case No. 7,567.

### JUDSON v. KELTY et al.

[5 Ben. 348;[1] 6 N. B. R. 165.]

District Court, S. D. New York. Oct. 27, 1871.

INVOLUNTARY BANKRUPTCY—CORPORATION—
FRAUDULENT TRANSFER.

1. A corporation, having sold the stock, &c. of a store, received in payment therefor two mortgages amounting to $10,000. The vice-president of the corporation, having been authorized by vote of the trustees to negotiate a sale of or effect a loan on the mortgages, on the best terms possible, endeavored to sell them, and finally sold them for the best offer he could get, being $7,000. The corporation having been put in bankruptcy within six months, the assignee filed a bill against the purchasers to recover back the mortgages. *Held*, that the facts were not sufficient to show that the defendants had reasonable cause to believe that the transfer was made with a view to prevent the property from being distributed under the bankruptcy act [of 1867 (14 Stat. 517)], or to defeat its object, or to impair, hinder, impede, or delay its effect.

2. In order to show that a transfer was made out of the usual and ordinary course of business, and was thus prima facie evidence of fraud, un-

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

der the thirty-fifth section of the bankruptcy act. it is necessary to show that the transfer was out of such usual and ordinary course of business in respect to articles of the description of that transferred.

[This was a suit by Charles N. Judson, assignee of the Eagle Gas-Stove Manufacturing Company, bankrupt, against Gibbons L. Kelty and others.]

Albert Roberts, for plaintiff.
William H. Arnoux, for defendants.

BLATCHFORD, District Judge. This bill is filed under the six months clause of the thirty-fifth section of the bankruptcy act. The bankrupts were put into involuntary bankruptcy by a petition filed February 6. 1869. The bill alleges that, on the 14th of January, 1869, and within six months before the filing of such petition, the bankrupts, being then insolvent, made an assignment and transfer to the defendants of two mortgages on real estate on Staten Island, with the bonds accompanying the same, given to secure $10,000, with interest, the same being then the property of the bankrupts, with a view to prevent the same being distributed under the bankruptcy act, and to defeat the object of, and to impair, hinder, impede and delay, the operation and effect of, said act, and that, at the time of making such assignment and transfer, the defendants had reasonable cause to believe the bankrupts to be insolvent, and that the assignment and transfer was so made to prevent said property from being distributed under the said act, and to defeat the object of, and to impair, hinder, impede and delay, the operation and effect of, said act. The prayer of the bill is, that such transfer may be declared fraudulent and void, and that the plaintiff may be declared to be entitled to the possession of the said property, as assets of the bankrupts, and may recover the same from the defendants, and that, if necessary, the defendants may be ordered to account for said property, under oath, to the plaintiff, and that, if the said property, or any part of it, has been disposed of by the defendants, plaintiff may recover from them the value of so much as has been disposed of.

The transfer of the mortgages was made under the authority of a resolution passed by the board of trustees of the bankrupts, who were a corporation, on the 19th of December, 1868. That resolution authorized Henry D. Blake. who was then the vice-president of the corporation, to negotiate a sale of, or effect a loan on, the mortgages, on the best terms possible for the interest of the company. He endeavored to effect a sale of them for some time. but could obtain no offer for them as large as that which the defendants made. He finally sold them to the defendants for $7,000. The evidence is satisfactory that that was as large a cash price as they would bring. They were payable in eighteen months from the 15th of December,

1868, one being for $6,000 and one for $4,000. The defendants paid to Mr. Blake, on this purchase, $1,000 on the 4th of January, 1869, and $6,000 on the 13th of January, 1869. The written assignment of the bonds and mortgages was executed and delivered on the 13th of January, 1869.

Even if it be assumed that the bankrupts were insolvent, and that the defendants had reasonable cause to believe them to be so, as well on the 4th of January as on the 13th of January, yet I see no state of facts which would warrant me in the conclusion, that, on either of those dates, the defendants had reasonable cause to believe that the transfer was made with a view to prevent the property from being distributed under the bankruptcy act, or to defeat its object, or to impair, hinder, impede or delay, its operation and effect, or even in the conclusion that the transfer was made with such view on the part of the corporation.

The fact was much commented on, that the check given by the defendants for the $1.000, on the 4th of January, was made payable to the order of Blake. while that given by them on the 13th of January was made payable to the order of the corporation, and it was sought to be maintained that the $1,000 was a loan made to Blake individually, and that such loan was repaid on the 13th, by taking the amount out of the price to be paid for the mortgages, and giving the corporation only $6,000. But, on the whole evidence, it appears that the $1,000 was paid on the 4th as a part of the purchase price of $7,000, to be paid for the mortgages.

It was also a subject of remark, on the hearing, that Blake, on the 14th of January, paid off to the defendants individual indebtedness of his to them amounting to $3,-646 27. But it appears that the transaction between the defendants and the corporation, or between them and Blake, as representing the corporation, in reference to the sale of and the payment for the mortgages. was fully closed on the 13th of January. without there being any agreement or understanding between the defendants and Blake that he should pay to the defendants, out of the money paid by them for the mortgages, the amount of his individual indebtedness to them. Whatever claim the plaintiff may have to investigate and challenge. as against the defendants and Blake, the disposition of the money received by Blake as the purchase price of the mortgages, no such question is presented on the bill in this suit. It attacks only the transfer of the mortgages.

The point was taken, that the transfer of the mortgages was not made in the usual and ordinary course of business of the corporation. and that that fact is prima facie evidence of fraud. under the thirty-fifth section of the act. throwing on the defendants the affirmative, to show that there was no fraud. To bring this clause of the thirty-fifth section into operation, it is necessary

for the plaintiff first to show that the transfer of the mortgages was made out of the usual and ordinary course of business of the corporation. It is not enough to show that the general business of the corporation was to make and sell gas stoves and that the sale of a bond and mortgage was not the sale of a gas stove. Without reference to the general business of the debtor, the transfer must be out of his usual and ordinary course of business in respect to an article of the description of that transferred. In this case, the corporation had sold the stock, fixtures, and lease of a store in the Sixth avenue, in New York, and received the mortgages in payment therefor. It cannot be said to be out of the usual and ordinary course of business, for a corporation, whose general business is the making and selling of gas stoves, and which owns mortgages yet to become due, and desires to realize money thereon for use in its regular general business, to sell such mortgages for their highest cash value. It results, that the bill must be dismissed, with costs.